1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EDWARD JAMES WILLARD,

11              Petitioner,                No. CIV S-02-0705 DFL DAD P

12        vs.

13   DIANA BUTLER, et al.,                 ORDER AND

14              Respondents.               FINDINGS & RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner alleges that the failure of the Board of

18   Prison Terms (BPT or Board) to find him suitable for parole at a parole suitability hearing in

19   June of 2000 violated his rights to due process and equal protection.  Upon careful consideration

20   of the record and the applicable law, the undersigned will recommend that petitioner's

21   application for habeas corpus relief be denied.  Petitioner has also filed a motion for discovery

22   and two requests for judicial notice.  Petitioner's requests for judicial notice will be granted and

23   petitioner's request for discovery will be denied.

24                        PROCEDURAL BACKGROUND

25            Pursuant to a plea of guilty, petitioner is serving a sentence of sixteen-years-to-life

26   in state prison for second degree murder.  (Answer, Ex. A.)  Petitioner's minimum eligible parole

date (MEPD) is August 8, 1995.  (Answer, Ex. C at 1; Traverse at 11.)[1]  Petitioner had his first parole suitability hearing on June 16, 1994, and had subsequent hearings on September 14, 1995, and September 4, 1997.  (Am. Pet., filed Nov. 26, 2002 (hereinafter Am. Pet.), first Ex. B, Ex. G.)  Petitioner has not been found suitable for parole at any parole consideration hearing.  (Id.)  On June 1, 2000, petitioner appeared before a Board panel for his fourth parole suitability hearing.  (Answer, Ex. C.)  The Board again found petitioner unsuitable for parole at that time and deferred his next parole hearing for a period of two years.  (Id.)

Petitioner challenged the June 1, 2000, decision of the BPT finding him unsuitable for parole in an appeal to the Board dated August 1, 2000.  (Am. Pet., Ex. C.)  The appeal was denied in a reasoned decision dated December 12, 2000.  (Id.)  Petitioner filed a petition for writ of habeas corpus in the California Superior Court on or about June 5, 2001.  (Am. Pet., first Ex. B.)  That petition was denied in a reasoned decision dated June 28, 2001.  (Id.)  On or about July 9, 2001, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for the Second Appellate District.  (Id.)  That petition was summarily denied by order dated August 8, 2001.  (Id.)  On August 31, 2001, petitioner filed a petition for writ of habeas corpus in the California Supreme Court.  (Id.)  That petition was summarily denied by order dated February 27, 2002.  (Id.)  Petitioner filed his amended federal petition for writ of habeas corpus pending before this court on November 26, 2002.

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

_____

[1]  The minimum eligible parole release date is the date before which the Board must meet to set an actual parole release date.  Cal. Penal Code § 3041.

1  interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

2  Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.

3            However, a "claim of error based upon a right not specifically guaranteed by the

4  Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so

5  infects the entire trial that the resulting conviction violates the defendant's right to due process."

6  Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th

7  Cir. 1980)).  See also Lisenba v. California, 314 U.S. 219, 236 (1941); Henry v. Kernan, 197

8  F.3d 1021, 1031 (9th Cir. 1999).  In order to raise such a claim in a federal habeas corpus

9  petition, the "error alleged must have resulted in a complete miscarriage of justice."  Hill v.

10 United States, 368 U.S. 424, 428 (1962).  See also Henry, 197 F.3d at 1031; Crisafi v. Oliver,

11 396 F.2d 293, 294-95 (9th Cir. 1968).  Habeas corpus cannot be utilized to try state issues de

12 novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

13           Because this action was filed after April 26, 1996, the provisions of the

14 Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable.  See Lindh v.

15 Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).

16 Section 2254(d) as amended by the AEDPA, sets forth the following standards for granting

17 habeas corpus relief:

18           An application for a writ of habeas corpus on behalf of a
             person in custody pursuant to the judgment of a State court shall
19           not be granted with respect to any claim that was adjudicated on
             the merits in State court proceedings unless the adjudication of the
20           claim -

21           (1) resulted in a decision that was contrary to, or involved
             an unreasonable application of, clearly established Federal law, as
22           determined by the Supreme Court of the United States; or

23           (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
24           State court proceeding.

25 28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

26 Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

1    The California Court of Appeal and California Supreme Court summarily denied

2    petitioner's habeas corpus petitions.  (Am. Pet., first Ex. B.)  However, "[w]here there has been

3    one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that

4    judgment or rejecting the same claim rest upon the same ground."  <u>Ylst v. Nunnemaker</u>, 501 U.S.

5    797, 803 (1991).  Thus, in addressing petitioner's claims, this court will consider the reasoning of

6    the California Superior Court, which issued a written decision rejecting petitioner's claims.

7    (Answer, Ex. B.)

8    II.  <u>Petitioner's Claims</u>

9        A.  <u>Due Process</u>

10    Petitioner claims that the failure of the BPT to find him suitable for parole

11    deprived him of his liberty without due process of law.  A protected liberty interest may arise

12    from either the Due Process Clause of the United States Constitution or state laws.  <u>Board of

13    Pardons v. Allen</u>, 482 U.S. 369, 373 (1987).  The United States Constitution does not, of its own

14    force, create a protected liberty interest in a parole date, even one that has been set.  <u>Jago v. Van

15    Curen</u>, 454 U.S. 14, 17-21 (1981).  However, "a state's statutory scheme, if it uses mandatory

16    language, 'creates a presumption that parole release will be granted' when or unless certain

17    designated findings are made, and thereby gives rise to a constitutional liberty interest."

18    <u>McQuillion v. Duncan</u>, 306 F.3d 895, 901 (9th Cir. 2002) (quoting <u>Greenholtz v. Inmates of

19    Nebraska Penal</u>, 442 U.S. 1, 12 (1979)).  California's parole scheme gives rise to a cognizable

20    liberty interest in release on parole, even for prisoners who have not already been granted a

21    parole date.  <u>Id.</u> at 903; <u>Biggs v. Terhune</u>, 334 F.3d 910, 914 (9th Cir. 2003).  Accordingly, this

22    court must examine whether the deprivation of petitioner's liberty interest in this case lacked

23    adequate procedural protections and therefore violated due process.

24    Where a constitutionally protected liberty interest exists, the requirements

25    imposed by the Due Process Clause are flexible and variable and depend upon the particular

26    situation being examined.  <u>Greenholtz</u>, 442 U.S. at 12.  The process due is such procedural

4

1    protection as may be "necessary to ensure that the decision . . . is neither arbitrary nor

2    erroneous." Washington v. Harper, 494 U.S. 210, 228 (1990).  Because "parole-related decisions

3    are not part of the criminal prosecution, the full panoply of rights due a defendant in such a

4    proceeding is not constitutionally mandated." Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389,

5    1390 (9th Cir. 1987) (internal quotations and citation omitted).  Where, as here, parole statutes

6    give rise to a protected liberty interest, due process is satisfied in the context of a hearing to set a

7    parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if

8    parole is denied, a statement of the reasons for the denial. Id. at 1390 (quoting Greenholtz, 442

9    U.S. at 16). See also Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural

10   process due in cases involving parole issues).  Violation of state mandated procedures will

11   constitute a due process violation only if the violation causes a fundamentally unfair result.

12   Estelle, 502 U.S. at 65.

13           In California, the setting of a parole date for a state prisoner is conditioned on a

14   finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The

15   requirements of due process in the parole suitability setting are satisfied "if some evidence

16   supports the decision." McQuillion, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S.

17   445, 456 (1985)); Powell v. Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Perveler v. Estelle,

18   974 F.2d 1132, 1134 (9th Cir. 1992)).  "The 'some evidence' standard is minimally stringent,"

19   and a decision will be upheld if there is any evidence in the record that could support the

20   conclusion reached by the factfinder. Powell, 33 F.3d at 40 (citing Cato v. Rushen, 824 F.2d

21   703, 705 (9th Cir. 1987)); Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

22   However, "the evidence underlying the board's decision must have some indicia of reliability."

23   Jancsek, 833 F.2d at 1390. See also Perveler, 974 F.2d at 1134.  Determining whether the "some

24   evidence" standard is satisfied does not require examination of the entire record, independent

25   assessment of the credibility of witnesses, or the weighing of evidence. Toussaint,

26   /////

1   801 F.2d at 1105.  The question is whether there is any reliable evidence in the record that could

2   support the conclusion reached.  Id.

3          Here, there is no dispute that petitioner was provided advance written notice of his

4   parole hearing, an opportunity to be heard and to submit materials for the Board's consideration,

5   and access to the materials submitted to the Board for its consideration by others.  Further,

6   petitioner was informed that he had a right to an impartial panel and he specifically denied any

7   objections to the panel members in attendance at his June 1, 2000, hearing.  (Answer, Ex. C at 3.)

8   The next question is whether the BPT's decision that petitioner was unsuitable for parole was

9   supported by "some evidence" that bore "indicia of reliability."

10          Pursuant to California regulations, parole may be denied if the Board "determines

11   that the gravity of the current convicted offense or offenses, or the timing and gravity of current

12   or past convicted offense or offenses, is such that consideration of the public safety requires a

13   more lengthy period of incarceration for [the] individual." Cal. Penal Code § 3041(b).  In

14   addition, the Board can consider all relevant information including potential threats to public

15   safety, whether the offense was carried out in a manner which demonstrates exceptionally callous

16   disregard for human life, whether the motive for the crime is inexplicable or trivial, and whether

17   the prisoner engaged in misconduct while imprisoned.  Cal. Code Regs. tit. 15 § 2402(c) (1), (6).

18   See also, Biggs, 334 F.3d at 915.  Conversely, circumstances tending to indicate suitability for

19   parole include lack of a juvenile record, a stable social history, signs of remorse, the lack of a

20   history of violent crime, and the existence of realistic plans for release.  Cal. Code Regs. tit. 15 §

21   2402(d) (1), (2), (3), (6), (8).  The importance attached to any of these circumstances is left to the

22   judgment of the panel.  (Id.)

23          After a review of the record, this court concludes that the BPT's decision that

24   petitioner was unsuitable for parole was supported by "some evidence" that bore "indicia of

25   reliability."  In denying petitioner a parole date the panel based its decision on the fact that

26   petitioner's commitment offense was "carried out in an especially cruel manner," that "the victim

1   was abused during the offense" and that "the motive for the crime was inexplicable or very trivial

2   in relation to the offense."[2]   (Answer, Ex. C at 38.)  As set forth above, the heinous or cruel

3   nature of the commitment offense is a valid basis for an unsuitability finding by the Board.  Cal.

4   Code Regs. tit. 15 § 2402(c) (1); In re Seabock, 140 Cal. App. 3d 29, 35 (1983) (finding that the

5   nature of an inmate's commitment offense is a circumstance supporting finding of unsuitability

6   for parole).  The Board further found that petitioner had a history of criminal conduct, including

7   "at least eight arrests," five "minor jail terms," and "one probationary period when he was

8   arrested and convicted for breaking and entering."  (Answer, Ex. C at 39.)  The Board also noted

9   that petitioner had suffered 17 prison disciplinary convictions, including one which had occurred

10   earlier that year.  (Id.)[3]  In addition, the Board noted that petitioner's psychiatric report was not

11   "totally favorable of release" (id. at 39), that there was no indication of what petitioner would do

12   after being paroled to his native Canada (id. at 40), and that the District Attorney's office in Los

13   Angeles County had filed an opposition to a finding of parole suitability.  (Id.)  The record

14   /////

15   /////

16   _____

17      [2]  In summarizing petitioner's commitment offense, the presiding commissioner stated that petitioner:

18        apparently had befriended another individual by the name of John
     D. Koninagans . . . who was visiting here from Holland.

19        Apparently at some time during their trip across the United States,
     they ended up in the city of Venice, California.  Some time during

20        this period of time, they were out drinking and an argument
     ensued, and right now it's difficult to determine based on

21        statements made by the inmate as well as contradictory statements
     made in certain reports as to what the real motive for the crime is.

22        The inmate indicated it was a fight, however, the documents
     indicate that it was a – he had indicated that he had been ripped off.

23        Nevertheless, the inmate did stab the victim ten times, slit his
     throat, and the victim did die as a result of his injuries.

24

25   (Answer, Ex. C at 38-39.)

26      [3]  This disciplinary conviction was apparently downgraded to "an administrative 115."
(Answer, Ex. C at 39.)

1  reflects that there was some reliable evidence before the Board to support each of cited factors

2  and upon which the Board could have based its parole decision.[4]

3        In Biggs, the Court of Appeals for the Ninth Circuit indicated that a continued

4  reliance on an unchanging factor such as the circumstances of the offense could result in a due

5  process violation.  While the Ninth Circuit rejected several of the reasons given by the BPT for

6  finding the petitioner in that case unsuitable for parole, it upheld three:  (1) petitioner's

7  commitment offense involved the murder of a witness; (2) the murder was carried out in a

8  manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner

9  could benefit from therapy.  334 F.3d at 913.  However, the court cautioned that continued

10 reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to that

11 offense in denying parole could violate due process.  In this regard, the court observed:

12            As in the present instance, the parole board's sole supportable
             reliance on the gravity of the offense and conduct prior to
13           imprisonment to justify denial of parole can be initially justified as
             fulfilling the requirements set forth by state law.  Over time,
14           however, should Biggs continue to demonstrate exemplary
             behavior and evidence of rehabilitation, denying him a parole date
15           simply because of the nature of his offense would raise serious
             questions involving his liberty interest in parole.
16

17 Id. at 916.  The court also stated that "[a] continued reliance in the future on an unchanging

18 factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the

19 rehabilitative goals espoused by the prison system and could result in a due process violation."

20 Id. at 917.

21        The record before this court reflects that petitioner was found unsuitable for

22 parole on three occasions prior to the June 2000 hearing challenged here.  In reaching those prior

23 decisions, the Board panels in each case also relied on the nature of the commitment offense,

24 _____

25    [4]  The Board also determined that petitioner needed "continued therapy in order to face,
    discuss, understand, and cope with stress in a nondestructive manner."  (Id. at 40-41.)  This
    finding does not find support in the record before this court.  (See Am. Pet., Ex. E.)  However,
26  the other factors, described above, provide a sufficient and proper basis for the Board's decision.

8

1  petitioner's prior criminal history, and previous prison disciplinary convictions.  (Am. Pet., Ex.

2  G.)  At the conclusion of the June 2000 hearing the Board found petitioner unsuitable for parole

3  base upon: (1) the cruel manner in which the commitment offense was carried out; (2) the motive

4  for the crime was inexplicable or trivial; (3) petitioner's prior record reflected an escalating

5  pattern of criminal conduct; (4) his institutional record including 17 disciplinary convictions and

6  a classification score of 19 points; (5) a psychological report that is not totally favorable of

7  release; and the lack of a documented release plan. (Answer Ex. C at 38-40.)[5]

8           Petitioner also argues that the Board's decision denying him a parole date has the

9  effect of requiring him to serve a sentence that is longer than that prescribed for other inmates

10  convicted of second degree murder.  In support of his claim in this regard, petitioner refers the

11  court to California Code Regs. tit. 15 § 2403, which sets forth a matrix of base terms for second

12  degree murder ("the matrix").  He alleges that the Board must ensure that his sentence falls

13  within this matrix.  Petitioner also claims that California Penal Code § 3041 requires the Board

14  to grant him a parole date because of its direction that one year prior to an inmate's MEPD, a

15  Board panel shall meet with the inmate and "shall normally" set a parole release date.  Petitioner

16  argues that this provision  required the Board to set his release date within the time limits

17  provided by the matrix.

18           All of these claims were recently rejected by the California Supreme Court in In re

19  Dannenberg, 34 Cal. 4th 1061 (2005) (holding that the Board is not required to refer to its

20  sentencing matrices or to compare other crimes of the same type in deciding whether a prisoner is

21  suitable for parole).  More importantly for purposes of this federal habeas corpus action,

22  petitioner has not cited any United States Supreme Court or other federal authority for the

23

24           [5]  Because of this other evidence relied upon by the Board, this is not a case where
petitioner's due process rights are implicated by repeated parole denials based upon continued
25  reliance solely on  the unchanging factors of the commitment offense and conduct prior to
imprisonment in the face of a positive psychological report and substantial evidence of remorse
26  and rehabilitation.  See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003).

1  proposition that the due process clause requires a state parole board to either set a parole date as a

2  matter of course where the board members believe a prisoner poses an unreasonable risk of

3  danger to society, engage in a comparative analysis before denying parole suitability, or to set a

4  parole date within a state's "matrix."  Petitioner argues that there are factors favoring his release

5  on parole which outweigh the factors relied upon to deny him parole and that the BPT must

6  therefore find him suitable for parole.  He also argues that the Board's failure to find him suitable

7  for parole violated various state laws.  However, federal habeas corpus relief does not lie for a

8  violation of state law.  Estelle v. McGuire, 502 U.S. at 67-68.  As discussed above, federal due

9  process requires only that the Board's decision be based on "some evidence" bearing "indicia of

10  reliability."  This is true even though there may be other factors favoring release.  The Board's

11  decision, reached at the parole suitability hearing in June of 2000, that petitioner was unsuitable

12  for parole meets that test.  Accordingly, petitioner is not entitled to relief on this claim.

13          B.  Equal Protection

14          Petitioner also argues that his Fourteenth Amendment right to equal protection has

15  been violated because his sentence falls outside the sentencing range set forth in the matrix and is

16  longer than sentences being served by other prisoners under similar circumstances.  Petitioner

17  specifically argues that he must be treated similarly to the petitioner in In re Rosenkrantz, 80 Cal.

18  App. 4th 409 (2000).

19          A petitioner raising an equal protection claim in the parole context must

20  demonstrate that he was treated differently from other similarly situated prisoners and that the

21  Board lacked a rational basis for its decision.  See McGinnis v. Royster, 410 U.S. 263, 269-70

22  (1973) (reviewing differences in release dates under rational basis test and balancing the state's

23  efforts to ensure that prisoners are sufficiently prepared for release to protect public safety, on the

24  one hand, with the prisoner's interest in release, on the other hand); McQueary v. Blodgett, 924

25  F.2d 829, 835 (9th Cir. 1991).  Petitioner has failed to do this.

26  /////

1   First, the inmate to whom petitioner compares himself was ultimately not granted

2   parole. <u>See</u> <u>In re Rosenkrantz</u>, 29 Cal. 4th 616, 685 (2002). Moreover, even were that not the

3   case it is apparent that inmate Rosenkrantz and petitioner were not similarly situated. Inmate

4   Rosenkrantz had a clean prison disciplinary record. Petitioner most certainly did not. Petitioner

5   was found unsuitable for parole based upon evidence bearing some indicia of reliability.

6   Petitioner has not shown that Rosenkrantz or any other inmate who was similarly situated to him

7   received a parole date after being found unsuitable for parole. Petitioner has not demonstrated

8   that the Board violated his equal protection rights by applying a different suitability standard to

9   him. Accordingly, petitioner is not entitled to relief on his claim that his rights pursuant to the

10  Equal Protection Clause were violated by the Board's June of 2000 decision finding him

11  unsuitable for parole.

12                          REQUESTS FOR JUDICIAL NOTICE

13  On July 10, 2003, petitioner filed a request that this court take judicial notice of

14  the decision of the Ninth Circuit Court of Appeals in <u>Biggs v. Terhune</u>. This request will be

15  granted. The court has considered and relied upon the <u>Biggs</u> decision in connection with these

16  findings and recommendations.

17  On April 27, 2004, petitioner filed a request that the court take judicial notice of

18  the report and recommendation of United States Magistrate Judge Rosalyn M. Chapman of the

19  United States District Court for the Central District of California in <u>Masoner v. California</u>, No.

20  CV 03-1261-ER, 2003 WL 23512079 (C.D. Cal. Oct. 8, 2003) (rejecting petitioner's claim that

21  the Board's refusal to find him suitable for parole violated his due process rights). This request

22  will also be granted. Although <u>Masoner</u> is not reported in the official reports, the undersigned

23  has reviewed the decision in that case for informational purposes. The court has also reviewed

24  the unreported decision of District Judge Edward Rafeedie of the Central District of California

25  rejecting Judge Chapman's report and recommendation and granting Masoner's habeas petition.

26  <u>See</u> <u>Masoner v. California</u>, No. CIV 03-1261-ER, 2004 WL 1080177 (C.D. Cal. Jan. 23, 2004)

11

1  (finding that repeated refusals by the BPT to grant a parole date to the petitioner, who had an

2  exemplary record, violated his due process rights).

3  REQUEST FOR DISCOVERY

4  On May 14, 2003, petitioner filed a motion for discovery.  Therein, he requests the

5  following information:

> 1.  The number of parole hearings held for male prisoners
> sentenced for second degree murder since 1994 (yearly figures);
>
> 2.  The number of parole grants to male prisoners sentenced for
> second degree murder since 1994 (yearly figures);
>
> 3.  The number of calendar years served when the above group of
> prisoners were granted parole (average for each year);
>
> 4.  The number of those parole grants that were rescinded by the
> review panel (yearly figures);
>
> 5.  The number of those parole grants that were rescinded by the
> Governor (yearly figures);
>
> 6.  The number of prisoners actually released on parole convicted
> of second degree murder since 1994 (yearly figures); and
>
> 7.  The number of prisoners that had a base term set one year prior
> to their MEPD (yearly figures since 1994).

17  Petitioner argues that the discovery is directly related to the claims presented in his petition.

18  Rule 6 of the Rules Governing Section 2254 Cases in the United States District

19  Courts permits discovery in habeas corpus actions.  A habeas petitioner does not enjoy the

20  presumptive entitlement to discovery of a traditional civil litigant and discovery is available only

21  in the discretion of the court and for good cause shown.  See Rules Governing Section 2254

22  Cases, Rule 6(a) 28 U.S.C. foll. § 2254; Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999).

23  See also Hayes v. Woodford, 301 F.3d 1054, 1065 n.6 (9th Cir.2002) (discovery is available

24  "only in the discretion of the court and for good cause").

25  Respondent argues that the discovery requested by petitioner is not relevant to any

26  of the claims contained in the instant habeas corpus petition.  This court agrees.  The requested

12

1   information is largely irrelevant to whether the Board's decision finding petitioner unsuitable for

2   parole was based on "some evidence" or whether petitioner received treatment equal to other

3   similarly situation prisoners.   The court does not find good cause for the issuance of an order

4   allowing the discovery petitioner seeks.   Accordingly, petitioner's request for discovery will be

5   denied.[6]

6              For the foregoing reasons, IT IS HEREBY ORDERED that:

7              1.  Petitioner's July 10, 2003, request for judicial notice is granted;

8              2.  Petitioner's April 27, 2004, request for judicial notice is granted; and

9              3.  Petitioner's May 14, 2003, motion for discovery is denied.

10             IT IS HEREBY RECOMMENDED that petitioner's application for a writ of

11  habeas corpus be denied.

12             These findings and recommendations are submitted to the United States District

13  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14  days after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17

18          [6] Petitioner has filed another habeas corpus action in this court (case no. CIV S-04-0743
    FCD DAD P) in which he seeks the same discovery sought here and argues that it is relevant to
19  his claim that his rights pursuant to the Eighth and Fourteenth Amendments were violated
    because the Board disregarded regulations ensuring fair suitability hearings and instead operated
20  under a policy that all murderers be found unsuitable for parole.  See Valerio v. Boise Cascade
    Corp., 80 F.R.D. 626, 635 n.l (N.D. Cal. 1978) (judicial notice may be taken of court records),
21  aff'd, 645 F.2d 699 (9th Cir. 1981).  Although petitioner makes brief reference to a "no-parole
    policy" in the points and authorities in support of the instant petition and in his traverse (see
22  Mem. of P. & A. in Supp. of Am. Pet. for Writ of Habeas Corpus, at 7, 10; Traverse at 20-21), he
    has not properly articulated any such claim in the instant habeas corpus action.  Petitioner may
23  not raise a new claim in this manner.  See Jones v. Gomez, 66 F.3d 199, 204 (1995); Cacoperdo
    v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is not the proper pleading to raise
24  additional grounds for relief).  Petitioner has alleged only two cognizable federal constitutional
    claims in the instant petition: that his rights pursuant to the Fourteenth Amendment Due Process
25  and Equal Protection Clauses were violated by the failure of the BPT to find him suitable for
    parole at the June 2000 parole suitability hearing.  Any additional arguments/claims were not
26  appropriately raised in the amended petition pending in this case and, therefore, will not be
    addressed by this court.

1   shall be served and filed within ten days after service of the objections.  The parties are advised

2   that failure to file objections within the specified time may waive the right to appeal the District

3   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

4   DATED: July 5, 2005.

5

6                                          DALE A. DROZD
                                          UNITED STATES MAGISTRATE JUDGE
7

8   DAD:8:willard705.hc

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26